UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Plaintiff,

vs.

FOUR AMIGOS TRAVEL, INC., d/b/a "Four
Amigos Travel," and TOP DOG TRAVEL, INC.,

Defendants.

Case No.:

**PLAINTIFF UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION'S COMPLAINT AND DEMAND FOR JURY TRIAL**

This is an employment discrimination action brought by the United States Equal Employment Opportunity Commission ("EEOC" or the "Commission") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to Charging Parties Kathleen Snow and Anne Patricia Matacchiero, and a class of other, similarly situated females who were adversely affected by such practices.

As stated with greater particularity in Paragraphs 1 through 48 below, the Commission alleges that Four Amigos Travel, Inc., d/b/a Four Amigos, and Top Dog Travel, Inc. (hereinafter collectively referred to as "Defendants") subjected Ms. Snow, Ms. Matacchiero, and similarly situated females to unlawful employment practices on the basis of their sex, female. More specifically, the Commission alleges that Defendants violated Title

-1-

VII when they subjected Ms. Snow, Ms. Matacchiero, and similarly situated females who worked at Defendants' Largo Facility since at least 2008 to unwelcome sexual harassment which was sufficiently severe and pervasive to adversely affect the terms and conditions of their employment and create a hostile, abusive work environment. The Commission further alleges that Defendants violated Title VII when they caused the constructive discharge of Charging Parties Snow and Matacchiero.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (f)(3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (f)(3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida, Tampa Division.

## PARTIES

3. Plaintiff United States Equal Employment Opportunity Commission ("EEOC" or the "Commission") is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (f)(3).

4. At all relevant times, Defendants have been Florida corporations doing business in the State of Florida and have continuously had at least 15 employees.

5. At all relevant times, Defendants were the employers of and had supervisory control of over all individuals working at Four Amigos Travel, Inc., d/b/a Four Amigos, and Top Dog Travel, Inc.

6. At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

7. At all relevant times, Charging Parties and similarly situated females have been employees within the meaning of Section 701 of Title VII, 42 U.S.C. §§ 2000e(f).

## CONDITIONS PRECEDENT

8. More than thirty days prior to the institution of this lawsuit, Charging Parties Snow and Matacchiero ("Charging Parties") each filed a Charge of Discrimination with the Commission alleging violations of Title VII.

9. Prior to the institution of this lawsuit, the Commission issued Letters of Determination finding reasonable cause to believe that that Charging Parties and similarly situated individuals were subjected to sexual harassment and that Charging Parties were constructively discharged as a result.

10. Prior to the institution of this lawsuit, the Commission's representatives attempted to eliminate the unlawful employment practices alleged below and to effect Defendants' voluntary compliance with Title VII through informal methods of conciliation, conference, and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. Sections 2000e-5(b).

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

12. Defendants Four Amigos Travel and Top Dog Travel are high volume telemarketers of vacation packages in the State of Florida.

13. Four Amigos Travel has been conducting business in Florida since 1998; Top Dog Travel has been conducting business in Florida since 2009.

14. On or about 2009, Top Dog Travel also performed the same business operations as Four Amigos Travel.

15. Defendants have operated out of offices in Largo, Orlando, and Ft. Lauderdale, Florida at various times.

16. Defendants are owned and directed by sole owner and shareholder Ronald M. Schlom ("Schlom"), who is the President, Secretary, Treasurer and Director for each Defendant corporation.

17. Defendants managed their Largo facility operations through a General Manager, who had the authority to hire and fire, and through Sales Managers and an Office Administrator.

18. General Manager Derek May ("May") supervised Defendants' Sales Managers including, but not limited to, William Howell, Rob or Roger Birkfield, Ed Arneau, Christopher Avitable, James Blake, Mike Maar, Ritchie Sandberg, Rob Tennell, Ryan Tracy and Office Administrator Tara Saarinen.

19. Defendants' Largo office operated out of an office building, consisting of a large room of approximately 20-25 booths and two smaller rooms with six to eight booths, each equipped with a single desk, chair and telephone.

20. Defendants' business operated in two shifts between 10 a.m. and midnight, six days a week, as follows: (1) the day shift was from 10:00 a.m. until 4:00 p.m.; and (2) the evening shift was from 3:00 p.m. until midnight.

21. Management employees worked the day shift, which overlapped with the evening shift.

22. Occasionally May, Howell and some of the other managers would also work the evening shift.

23. Charging Parties Snow and Matacchiero, and similarly situated females, were employed by Defendants as "direct sellers" or telemarketers at Defendants' Largo offices.

24. Their duties included contacting sales leads by telephone and delivering a scripted sales talk that described various travel products for purchase.

25. The direct sellers/telemarketers worked under the ultimate supervision of General Manager May in the Largo facility, and under the direct supervision of the Sales Managers he supervised.

26. Since at least 2008 at Defendants' Largo facility, a class of female workers similarly situated to Charging Parties Snow and Matacchiero were subjected to sexual harassment by Defendants' management staff including, but not limited to, Defendants' General Manager Derek May and Sales Managers William Howell, Rob or Roger Birkfield, Ed Arneau, Christopher Avitable, James Blake, Mike Maar, Ritchie Sandberg, and Rob

Tennell.

27. On a near daily basis, Defendants' management staff subjected similarly situated females to frequent, unwelcome, pervasive and severe sexual behavior, comments and touching including, but not limited to, the following acts:

a. Daily sales meetings conducted by General Manager May and/or Sales Managers were sexually charged and General Manager May often engaged in and encouraged sexually explicit discussions on topics including, but not limited to, "how please a woman;"

b. Sales Managers grabbed their groins and danced sexually;

c. Howell regularly called female employees by derogatory terms like "bitches," or "dumb;"

d. Howell approached a female employee on the telephone from behind her, displayed a picture of an erect penis on his cell phone, and asked, "[i]mpressive, aren't I?;"

e. Howell approached female employees from behind and touched their hair or body, tried to grab the buttocks of female employees and pushed his body against a female employee's buttocks while saying "that was what I needed;"

f. Howell told female employees how "hot" they were and that they should "fool around with him" and have sex with him. For example, Howell told female employees that they "should go bathroom" where he [Howell] would "bend [them] over the toilet" and offered to pay $100 for sex.

g. Howell, Birkfield and Avitable regularly simulated sex acts and "humped" the

floor, walls, chairs and people in front of female employees, and while female employees were on the phone with customers. On one occasion, when told to stop by a female employee, Howell attempted to straddle her and sit on her lap;

h. Howell and Birkfield made vulgar comments about the physical attributes of female employees such as "how nice [their] ass[es]" were;

i. On numerous occasions, Birkfield physically grabbed the breasts or buttocks of female employees;

j. Birkfield simulated sex with female employees;

k. Sandburg made vulgar remarks to female employees including, but not limited to, that a female employee had a "pretty mouth... and [he] would like to see it around [his] cock" or, putting his knee between a female employee's legs and looking at her crotch, that "you look good enough to eat;" and

l. Arneau and Blake simulated holding a penis and performing oral sex acts.

28. Charging Parties Snow and Matacchiero and similarly situated females objected to the unwelcome, sexual comments, conduct and touching described above and complained about it to management verbally and in writing.

29. Notwithstanding their objections and complaints, Charging Parties and similarly situated females were ignored or told by management that they "didn't get along with anyone and to just go back to work," that if they "didn't like it [they] could go home" and "not to take it so seriously" among other dismissive responses.

30. Kathleen Snow ("Snow") worked for Defendants as a direct seller or

telemarketer on the day shift from about April 30, 2008 until June 3, 2008.

31. Defendants' Sales Managers Howell and Birkfield subjected Snow to frequent, unwelcome, pervasive and severe sexual behavior, comments and touching on an almost daily basis including, but not limited to, the following acts:

    a. Birkfield "humped" her shoulder and chair, simulating sexual acts;

    b. Birkfield asked her sexually demeaning questions, including but not limited to whether she and her daughter would have a "threesome" with him; and

    c. Howell made sexual comments about her breasts and told her she "had bedroom eyes," among other comments.

32. Snow complained about Howell and Birkfield's harassing behavior to Sales Manager Tracy and Office Administrator Saarinen on more than one occasion.

33. Notwithstanding her objections to and complaints to management about to the unwelcome sexual comments and conduct, nothing was done to stop the harassment and it continued.

34. Snow was forced to resign on June 3, 2008.

35. Anne Matacchiero ("Matacchiero") worked for Defendants as a direct seller or telemarketer on the day shift from February 5, 2008 until September 21, 2008.

36. Matacchiero occasionally worked the evening shift.

37. On a near daily basis, Defendants' Managers May, Howell, Arneau, Avitable, Blake, and Birkfield subjected Matacchiero to frequent, unwelcome, pervasive and severe sexual behavior, comments and touching on an almost daily basis until September 21, 2008,

including, but not limited to, the following acts:

   a. Howell approached Matacchiero's chair from behind and used it to simulate sexual intercourse;

   b. Howell told Matacchiero that he had hurt his finger from "jerking off too hard;"

   c. During daily sales meetings, General Manager May discussed getting a "blow job" over the weekend, described oral sex and how to lick a woman's anus to Matacchiero and her co-workers, and told females that if their "man did not go downtown" (perform oral sex) on a woman, someone else would become her man" or similar words to the same effect;

   d. Birkfield and Avitable simulated sexual intercourse in front of female workers, acknowledging it was sexual harassment; and

   e. Arneau and Blake simulated holding a penis and performing oral sex acts.

38. Matacchiero had objected to the sexual comments and conduct and, on or about September 17, 2008, Matacchiero complained to General Manager May and to Sales Manager Howell about the harassment.

39. Matacchiero prepared a written complaint and personally handed it to Howell.

40. Upon receipt of Matacchiero's written complaint, Manager Howell said, "Oh, this shit," and threw the complaint into the trash. Matacchiero later observed Howell reading the complaint and laughing.

41. Later that same day, Defendants Respondent called a meeting of all employees and told Matacchiero and all other employees in attendance that, if "anyone had a

complaint about Four Amigo's management [they] should write it down and go to gofuckyourself.com."

42. Notwithstanding her objections to the comments and behavior and her complaints to management about the same, nothing was done to stop the harassment.

43. On September 21, 2008, Matacchiero was forced to resign.

## STATEMENT OF CLAIMS

44. On a continuing basis since at least 2008, Defendants engaged in unlawful employment practices at their Largo facility in violation of 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a) by:

   a. subjecting Charging Parties Snow and Matacchiero and a class of similarly situated female employees who worked at Defendants' Largo facility on a continuing basis since at least 2008 to sexual harassment by Defendants' management employees; and

   b. creating and maintaining working conditions so intolerable and discriminatory that Charging Parties Snow and Matacchiero were forced to resign.

45. The effect of the practices complained of in Paragraphs 12 through 43 above has been to deprive Snow, Matacchiero and a class of similarly situated female employees who worked at Defendants' Largo facility since at least 2008 of equal employment opportunities and otherwise adversely impact their status as employees because of their sex.

46. The unlawful employment practices complained of in Paragraphs 12 through 43 above were intentional within the meaning of § 706(g)(1) of Title VII, 42 U.S.C. §§ 2000e-5(g)(1).

47. The unlawful employment practices complained of in Paragraphs 12 through 43 above were intentional and caused Charging Parties and similarly situated females who worked at Defendants' Largo facility since at least 2008 to suffer emotional distress including emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation and/or physical injuries.

48. The unlawful employment practices complained of in Paragraphs 12 through 43 above were intentionally done with malice and/or reckless indifference to the federally protected rights of Snow, Matacchiero and a class of similarly situated female employees who worked at Defendants' Largo facility since at least 2008.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, successors, assigns, and all persons in active concert or participation with it, from subjecting female employees to unwelcome, sexually graphic and vulgar sexual harassment and gender-based harassment and any other employment practice which discriminates on the basis of sex;

B. Order Defendants to institute and carry out policies, practices, and programs which prevent and redress sex discrimination in the workplace, provide equal employment

opportunities for women, and which eradicate the effects of its past and present unlawful employment practices;

C. Order Defendants to make whole Charging Parties and similarly situated females by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, rightful-place reinstatement or front pay in lieu thereof;

D. Order Defendants to make whole Charging Parties and similarly situated females by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraphs 12 through 43 above, in amounts to be determined at trial;

E. Order Defendants to make whole Charging Parties and similarly situated females by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in Paragraphs 12 through 43 above, including, but not limited to, emotional pain and suffering, inconvenience, humiliation, frustration and loss of enjoyment of life, in amounts to be determined at trial;

F. Order Defendants to pay Charging Parties and similarly situated females punitive damages for their malicious and reckless conduct described in Paragraphs 12 through 43 above, in amounts to be determined at trial;

G. Grant such further relief as the Court deems necessary and proper in the public interest; and

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: May 26, 2011

                            Respectfully Submitted

                            P. DAVID LOPEZ
                            General Counsel

                            JAMES LEE
                            Deputy General Counsel

                            GWENDOLYN YOUNG REAMS
                            Associate General Counsel

                            U.S. EQUAL EMPLOYMENT
                            OPPORTUNITY COMMISSION
                            131 M Street, N.E.
                            Washington, DC 20507

                            _/s/ Robert Weisberg_
                            ROBERT WEISBERG
                            Regional Attorney
                            Florida Bar # 285676

                            _/s/ Kimberly McCoy-Cruz_
                            KIMBERLY McCOY-CRUZ
                            Supervisory Trial Attorney
                            Florida Bar # 153729

                            _/s/ Gregory L. McClinton_
                            GREGORY L. McCLINTON
                            Senior Trial Attorney, TRIAL COUNSEL

                            U.S. EQUAL EMPLOYMENT
                            OPPORTUNITY COMMISSION

501 East Polk Steet, Suite 1000
Tampa, Florida 33602
Telephone: 813-202-4760
Facsimile: 813-228-2045
Email: gregory.mcclinton@eeoc.gov